Thelma Blahuta HUBENAK,
Petitioner,

v.

SAN JACINTO GAS TRANSMISSION COMPANY, Respondent.

Thelma Blahuta Hubenak and Emil Blahuta, Petitioners,

v.

San Jacinto Gas Transmission Company, Respondent.

Rosie Wenzel, Wilma McAndrew, Betty McCleney, and Tilford Sulak, Petitioners,

v.

San Jacinto Gas Transmission Company, Respondent.

Kutach Family Trust, Darryl Wayne Kutach, Trustee, Petitioner,

v.

San Jacinto Gas Transmission Company, Respondent.

Cusack Ranch Corporation, Petitioner,

v.

MidTexas Pipeline Company, Respondent.

MidTexas Pipeline Company, Petitioner,

v.

Wilbert O. Dernehl, Jr. and The First National Bank of Bellville, Respondents.

MidTexas Pipeline Company, Petitioner,

v.

Walter Roy Wright, Jr. and Robbie
V. Wright, Respondents.

MidTexas Pipeline Company,
Petitioner,

v.

Walter Roy Wright, III, Respondent.

Michael F. Cusack, Trustee of the
Michael F. Cusack Special Trust
No. One, Petitioner,

v.

MidTexas Pipeline Company,
Respondent.

Nos. 02–0213 to 02–0217, 02–0320,
02–0321, 02–0326, 02–0359.

Supreme Court of Texas.

Argued Feb. 19, 2003.

Decided July 2, 2004.

Stephen I. Adler, Austin, for Amicus Curiae Olin Corporation.

Richard L. McElya, Angleton, William D. Noel, for Thelma Blahuta Hubenak, Cusack Ranch Corporation, Walter Roy Wright, III.

Thomas E. Sheffield, Houston, for San Jacinto Gas Transmission Company.

Richard L. McElya, Angleton, for Emil Blahuta, Wilma McAndrew, Betty McCleney, Tilford Sulak, Darryl Wayne Kutach, Trustee, The First National Bank of Bellville, Robbie V. Wright, Michael Cusack Special Trust No. One.

William D. Noel, for Rosie Wenzel, Kutach Family Trust, Wilbert O. Dernehl, Jr., Walter Roy Wright, Jr., Michael F. Cusack, Trustee.

Kenneth C. Raney Jr., Dallas, Thomas E. Sheffield, Houston, for MidTexas Pipeline Company.

Stephen K. Carroll, Houston, for Amicus Curiae BP Pipelines Inc.

Justice OWEN delivered the opinion of the Court, in which Chief Justice PHILLIPS, Justice HECHT, Justice SMITH, Justice WAINWRIGHT and Justice BRISTER joined, and in which Justice JEFFERSON joined as to Parts I, II and III.

In these nine consolidated condemnation cases, we must determine whether (1) provisions in Texas Property Code section 21.012 permitting a condemning authority to begin condemnation proceedings if it is "unable to agree with the owner of the property on the amount of damages" and requiring a condemnation petition to contain a statement that it has been unable to agree are jurisdictional;[1] and (2) the condemning entities in these cases satisfied

---

1. TEX. PROP.CODE § 21.012(a), (b).

section 21.012's requirements. We hold that the "unable to agree" requirement is not jurisdictional and that the condemning entities have satisfied their burden to show that they and the landowners were unable to agree on the damages for the properties described in the underlying condemnation petitions. Accordingly, we (1) affirm the courts of appeals' judgments in *Hubenak v. San Jacinto Gas Transmission Co.* (*Hubenak 1*),[2] *Hubenak v. San Jacinto Gas Transmission Co.* (*Hubenak 2*),[3] *Wenzel v. San Jacinto Gas Transmission Co.*,[4] *Kutach Family Trust v. San Jacinto Gas Transmission Co.*,[5] and *Cusack Ranch Corp. v. MidTexas Pipeline Co.*;[6] (2) affirm the court of appeals' judgment in *MidTexas Pipeline Co. v. Cusack*[7] and remand that case to the trial court for further proceedings consistent with this opinion; and (3) reverse the court of appeals' judgments in *MidTexas Pipeline Co. v. Dernehl*,[8] *MidTexas Pipeline Co. v. Wright* (*Wright 1*),[9] and *MidTexas Pipeline Co. v. Wright* (*Wright 2*)[10] and remand those cases to their respective trial courts for further proceedings consistent with this opinion.

## I

San Jacinto Gas Transmission Co. and MidTexas Pipeline Co. are unrelated gas utility companies possessing eminent domain power.[11] Their respective boards of directors authorized them to construct natural gas pipelines. Some of the landowners across whose property a pipeline was to be built [12] challenged the validity of the condemnation proceedings. The affected properties are located in several Texas counties, including Fort Bend, Colorado, and Gonzales counties. Because the issues in each of the cases are the same, we will refer to the landowners collectively and to the gas utility companies as the "condemnors."

Before instituting condemnation proceedings, the condemnors hired certified real estate appraisers to appraise the proposed easements across the landowners' properties. In each case, the condemnors made at least two offers to the landowners to purchase their property. Each offer exceeded the appraised value of the easements, including a final offer that contained the following statement: "If you elect to reject this offer, [the condemnor] may institute a condemnation suit in [a designated court], to acquire the rights described in the Right of Way Agreement." The right-of-way agreements attached to all of the final offers included the following terms:

(1) the condemnor would receive the right to transport "gas, oil, petroleum

2. 65 S.W.3d 791 (Cause No. 02–0213 in this Court).

3. *Id.* (Cause No. 02–0214 in this Court).

4. *Id.* (Cause No. 02–0215 in this Court).

5. *Id.* (Cause No. 02–0216 in this Court).

6. 71 S.W.3d 395 (Cause No. 02–0217 in this Court).

7. 141 S.W.3d 215, 2002 WL 368639 (Cause No. 02–0359 in this Court).

8. 71 S.W.3d 852 (Cause No. 02–0320 in this Court).

9. 141 S.W.3d 208, 2002 WL 264833 (Cause No. 02–0321 in this Court).

10. 141 S.W.3d 211, 2002 WL 32626070 (Cause No. 02–0326 in this Court).

11. TEX. UTIL. CODE §§ 181.004, .008.

12. Thelma Blahuta Hubenak, Darryl Wayne Kutach, Emil Blahuta, Rosie Wenzel, Wilma McAndrew, Betty McCleney, Tilford Sulak, the Kutach Family Trust, Michael F. Cusack, Cusack Ranch Corp., Walter Roy Wright, Jr., Robbie V. Wright, Walter Roy Wright, III, and Wilbert O. Dernehl, Jr.

products, or any other liquids, gases or substances which can be transported through a pipeline";

(2) the condemnor would receive the right to assign the easement to any person or entity; and

(3) the landowners would be obligated to warrant and defend title to the easement.

The landowners repeatedly informed the condemnors during negotiations that they simply did not want a pipeline located on their properties, and in many cases, the landowners stated they would agree to sell the easements only at prices far above the appraised values, if at all. Ultimately, the landowners in each case either rejected or ignored the condemnors' final offers. The condemnors then sought condemnation in the appropriate trial courts.

Section 21.012 of the Texas Property Code provides:

(a) If the United States, this state, a political subdivision of this state, a corporation with eminent domain authority, or an irrigation, water improvement, or water power control district created by law wants to acquire real property for public use but is unable to agree with the owner of the property on the amount of damages, the condemning entity may begin a condemnation proceeding by filing a petition in the proper court.

(b) The petition must:

(1) describe the property to be condemned;

(2) state the purpose for which the entity intends to use the property;

(3) state the name of the owner of the property if the owner is known; and

(4) state that the entity and the property owner are unable to agree on the damages.[13]

The condemnation petitions filed in the trial courts contained all the foregoing statutory allegations, including a statement that the condemnors and the landowners were unable to agree on the damages for the properties to be condemned. The petitions, however, did not expressly seek to condemn or otherwise address the three matters contained in the right-of-way agreements regarding the transportation of oil and other substances, the right to assign the easement, and the landowners' obligations to warrant title.

In each case, the trial court appointed special commissioners to assess damages, and the special commissioners awarded the landowners less than the condemnors had offered for the easements, with the exception of the awards in *Cusack* and *Cusack Ranch.*[14] The landowners timely filed their objections to the commissioners' awards, and in *Dernehl, Wright 1,* and *Wright 2,* the landowners also filed counterclaims for possession of their land and damages for wrongful taking. In all of the cases, the condemnors responded by filing

---

**13.** TEX. PROP.CODE § 21.012.

**14.** The condemnors highest offers and commissioners awards were:

| | offer | award |
|---|---|---|
| Hubenak 1 (02-0213): | offer-$ 6,089.80 | award-$ 2,918.00 |
| Hubenak 2 (02-0214): | offer-$24,602.65 | award-$ 8,843.00 |
| Wenzel (02-0215): | offer-$14,620.38 | award-$ 4,606.00 |
| Kutach (02-0216): | offer-$ 6,360.00 | award-$ 2,670.00 |
| Cusack Ranch (02-0217): | offer-$25,000.00 | award-$25,836.24 |
| Dernehl (02-0320): | offer-$13,331.00 | award-$ 6,000.00 |
| Wright 1 (02-0321): | offer-$17,000.00 | award-$10,000.00 |
| Wright 2 (02-0326): | offer-$18,000.00 | award-$12,500.00 |
| Cusack (02-0359): | offer-$13,941.00 | award-$15,328.56 |

motions for partial summary judgment, asserting that they had satisfied all prerequisites to bringing the condemnation actions and that the amount of damages was the only issue pending before the court. In support of their motions, the condemnors attached affidavits from David M. Dunwoody on the issue of inability to agree. Dunwoody oversaw the negotiations between the condemnors and landowners in each of the nine cases. His affidavits recount obtaining independent appraisals, the offers made to the landowners, and the parties' failure to agree. In most of the cases, Dunwoody's affidavit also authenticates correspondence that passed between the condemnors and the landowners, including the condemnors' final offers, and the right-of-way agents' notes about landowner contacts.

In all the cases, the landowners filed cross-motions for partial summary judgment and pleas to the jurisdiction, arguing that the trial courts lacked jurisdiction over the condemnation proceedings because the condemnors failed to comply with section 21.012's "unable to agree" requirement. The landowners argued that the condemnors could not satisfy the "unable to agree" requirement unless they established that they had engaged in "good faith" negotiations with the landowners before initiating condemnation proceedings. The landowners asserted that the condemnors' offers were not "bona fide" or made in good faith because the offers were subject to the landowners' executing the right-of-way agreements attached to the final offer letters, which included the three additional matters that the condemnors had not explicitly sought to condemn and that the landowners maintained the condemnors could not legally condemn. The landowners also objected to Dunwoody's affidavits as hearsay, conclusory, and incomplete. The landowners' summary judgment evidence consisted primarily of the condemnors' admissions that the landowners had to sign the proposed right-of-way agreements in order to accept the offers.

The trial court in each of the cases initially granted the condemnors' motions for partial summary judgment and overruled the objections to Dunwoody's affidavits. Five of the cases—*Hubenak 1, Hubenak 2, Wenzel, Kutach,* and *Cusack Ranch*—then went to trial on the amount of damages. The juries in *Hubenak 2* and *Kutach* awarded damages to the landowners that were less than what the condemnors had offered them,[15] and the juries in *Hubenak 1, Wenzel,* and *Cusack Ranch* awarded more than what the condemnors had offered for the easements.[16] The landowners in the other four cases, however, filed supplemental pleas to the jurisdiction based on *Hubenak v. San Jacinto Gas Transmission Co.,*[17] in which the First Court of Appeals in Houston reversed the trial courts' judgments in *Hubenak 1, Hubenak 2, Wenzel,* and *Kutach* and held that the trial courts lacked jurisdiction because the condemnor did not negotiate for the same rights it sought to condemn.[18] As a result, the trial courts in *Cusack, Dernehl, Wright 1,* and *Wright 2* granted the landowners' jurisdictional pleas and dismissed the proceedings for want of ju-

---

15. The jury awards were:
    Hubenak 2 (02-0213):     $4,331.00
    Kutach (02-0216):     $1,247.00

16. The jury awards were:
    Hubenak 1 (02-0213):     $ 9,395.00
    Wenzel (02-0215):     $15,879.00
    Cusack Ranch(02-0217):     $30,000.00

17. 2000 WL 1056416 (Tex.App.-Houston [1st Dist.] 2000), *opinion withdrawn on rehg,* 65 S.W.3d 791 (Tex.App.-Houston [1st Dist.] 2001, pet. granted).

18. *Id.* at *5.

risdiction. The Houston court of appeals, however, thereafter withdrew its original opinion in *Hubenak v. San Jacinto* on rehearing and held that the "unable to agree" requirement had been satisfied.[19]

Accordingly, in the five cases that proceeded to trial, the courts of appeals ultimately affirmed the summary judgments in favor of the condemnors.[20] Although the courts applied different standards of review,[21] the courts agreed that section 21.012's requirements are jurisdictional and that there is legally sufficient evidence to support the trial courts' implied findings that the condemnors satisfied the "unable to agree" requirement by negotiating in good faith and making bona fide offers to purchase the easements before instituting the underlying condemnation proceedings.[22] These courts also held that including the three additional matters in the final offers did not negate good faith because there was no evidence that inclusion of the additional matters was an impediment to the parties' ability to agree on damages.[23] Rather, the courts noted, the landowners simply did not want a pipeline located on their properties.[24] Both courts further stated that futility is an exception

to the requirement of good faith negotiations, and in *Hubenak 1, Hubenak 2, Wenzel,* and *Kutach,* the court reasoned that further negotiations with the landowners were futile because they objected to the construction of a pipeline on their properties under any circumstances.[25]

The results on appeal differed with regard to the four cases dismissed for want of jurisdiction. The court of appeals in *Cusack* reversed the trial court's dismissal for want of jurisdiction, holding that the condemnor's offer was virtually identical to the offer in *Cusack Ranch* and that the offer was legitimate and showed that the parties were unable to agree despite having participated in good faith negotiations.[26] The court of appeals in *Dernehl, Wright 1,* and *Wright 2,* however, affirmed the dismissals, applying a legal sufficiency standard of review and holding in each case that the condemnor did not conclusively establish that the parties were "unable to agree."[27] The court said that in each case there was some evidence to support the trial court's dismissal because the condemnor's only offers to the landowners included property rights that the condemnor did not ultimately seek to condemn.[28]

**19.** *Hubenak,* 65 S.W.3d at 794.

**20.** *Cusack Ranch,* 71 S.W.3d at 396; *Hubenak,* 65 S.W.3d at 794.

**21.** *Cusack Ranch,* 71 S.W.3d at 398 (applying a *de novo* standard of review to the trial courts application of the law to the undisputed facts); *Hubenak,* 65 S.W.3d at 798 (applying a no evidence standard of review).

**22.** *Cusack Ranch,* 71 S.W.3d at 400 ("We find the evidence, as a whole, establishes that Mid-Texas engaged in good faith negotiations sufficient to satisfy the requirement that it was unable to agree with Cusack on the amount of damages prior to instituting the condemnation proceeding."); *Hubenak,* 65 S.W.3d at 801 (holding that the evidence was sufficient to show that the condemnor satisfied section 21.012's requirements "not only because negotiations with the Landowners were in fact

futile, but also because San Jacinto made bona fide offers to them").

**23.** *Cusack Ranch,* 71 S.W.3d at 400; *Hubenak,* 65 S.W.3d at 800–01.

**24.** *Cusack Ranch,* 71 S.W.3d at 399; *Hubenak,* 65 S.W.3d at 799.

**25.** *Hubenak,* 65 S.W.3d at 799.

**26.** 141 S.W.3d at 215, 2002 WL 368639.

**27.** *Dernehl,* 71 S.W.3d at 858; *Wright 1,* 141 S.W.3d at 208, 2002 WL 264833 at *2; *Wright 2,* 141 S.W.3d. at 211, 2002 WL 32626070 at *2.

**28.** *Dernehl,* 71 S.W.3d at 858; *Wright 1,* 141 S.W.3d at 208, 2002 WL 264833 at *2; *Wright 2,* 141 S.W.3d. at 211, 2002 WL 32626070 at *2.

None of the courts of appeals considered whether the condemnors could legally have sought to condemn the three additional matters, and none considered the landowners' objections to Dunwoody's affidavits.

We granted the petitions for review in all nine cases and consolidated them because they involve substantially similar facts, arguments, and briefing.

## II

Before we consider whether the "unable to agree" requirement contained in section 21.012 of the Texas Property Code [29] implicates subject matter jurisdiction, or the other issues in these consolidated cases, it is helpful to understand the procedural steps in a condemnation proceeding. The filing of the petition required by section 21.012 in either a district court or county court at law [30] is the first step. When a petition is filed, the judge of the court appoints "three disinterested freeholders who reside in the county as special commissioners to assess the damages." [31] These commissioners convene a hearing and determine the value of the property condemned and any damage to the remainder.[32] Any party may object to the special commissioners' findings, and if there are objections, "the court shall cite the adverse party and try the case in the same manner as other civil causes." [33]

Over the years, the courts have interpreted these Property Code provisions and their statutory predecessors. This Court has described the initial filing of the petition and the commissioners' hearing as an "administrative proceeding" that "converts into a normal pending cause" when objections to the commissioners' award are filed.[34] We have also said that filing objections " 'vacate[s] the award of the special Commissioners.' " [35] A number of courts of appeals have held that objections that the condemnor did not make an effort to agree cannot be raised during the administrative phase before the special commissioners, but must be raised in the trial court after the commissioners' award has issued.[36] This Court, as well as courts of appeals, have further held that if a landowner participates in the hearing before the special commissioners, the landowner waives the right to complain that the condemnor did not make an effort to agree.[37]

29. TEX. PROP.CODE § 21.012.

30. *Id.* § 21.001.

31. *Id.* § 21.014.

32. *Id.* §§ 21.015, .016.

33. *Id.* § 21.018.

34. *Amason v. Natural Gas Pipeline Co.,* 682 S.W.2d 240, 242 (Tex.1984).

35. *Id.* at 243 (quoting *Denton County v. Brammer,* 361 S.W.2d 198, 200 (Tex.1962)).

36. *See, e.g., Seiler v. Intrastate Gathering Corp.,* 730 S.W.2d 133, 137–38 (Tex.App.-San Antonio 1987, no writ), *overruled on other grounds by Schumann v. City of Schertz,* 100 S.W.3d 361 (Tex.App.-San Antonio 2002, no

pet.); *City of Houston v. Plantation Land Co.,* 440 S.W.2d 691, 694–95 (Tex.Civ.App.-Houston [14th Dist.] 1969, writ ref'd n.r.e.); *City of Dallas v. Crawford,* 222 S.W. 305, 307 (Tex. Civ.App.-Amarillo 1920, writ dism'd); *Rabb v. La Feria Mut. Canal Co.,* 62 Tex.Civ.App. 24, 130 S.W. 916, 918 (1910, writ ref'd).

37. *See, e.g., Jones v. City of Mineola,* 203 S.W.2d 1020, 1023 (Tex.Civ.App.-Texarkana 1947, writ ref'd); *Brown v. Lower Colo. River Auth.,* 485 S.W.2d 369, 371 (Tex.Civ.App.-Austin 1972, no writ); *City of Austin v. Hall,* 446 S.W.2d 330, 336 (Tex.Civ.App.-Austin 1969), *rev'd on other grounds,* 450 S.W.2d 836 (Tex.1970); *Lohmann v. Natural Gas Pipeline Co. of Am.,* 434 S.W.2d 879, 882 (Tex.Civ. App.-Beaumont 1968, writ ref'd n.r.e.); *Aronoff v. City of Dallas,* 316 S.W.2d 302, 306 (Tex.Civ.App.-Texarkana 1958, writ ref'd n.r.e.).

None of the landowners in the cases before us today participated in the hearings held by the special commissioners. They first raised their respective contentions that there were no good faith negotiations in the trial court, after the commissioners' awards were issued.

### III

■ Section 21.012(a) states that a condemning entity "may begin a condemnation proceeding" if it is "unable to agree with the owner of the property on the amount of damages."[38] Section 21.012(b) also states that a petition commencing a condemnation proceeding "must":

(1) describe the property to be condemned;

(2) state the purpose for which the entity intends to use the property;

(3) state the name of the owner of the property if the owner is known; and

(4) state that the entity and the property owner are unable to agree on the damages.[39]

We note at the outset that the condemnation petitions in these cases all include affirmative statements that there has been compliance with these requirements, including the "unable to agree" requirement. The landowners contend, however, that beyond merely "stat[ing]" that the parties were unable to agree, the condemnors were required to plead and prove that the parties were unable to agree after having engaged in "good faith" negotiations. The

landowners argue—and the courts of appeals agreed—that failure to both plead and prove compliance with section 21.012's requirements deprives the trial court of jurisdiction over the condemnation proceedings. The condemnors respond that the "unable to agree" requirement is not jurisdictional. For the reasons considered below, we conclude that this statutory requirement is mandatory, but failure to satisfy it does not deprive courts of subject matter jurisdiction.

There is no language in section 21.012 indicating that the "unable to agree" requirement is jurisdictional. Nor did section 21.012's statutory predecessors indicate by the language used that the "unable to agree" requirement was jurisdictional.[40] Nevertheless, in 1943, *Brinton v. Houston Lighting & Power Co.* held that the "provisions for the condemnation of private property for public use are special and summary in character, hence must be strictly complied with by the condemning authority, any ignoring thereof rendering the proceedings wholly void."[41] That decision concluded that the "statute seems to be explicit in its requirement that there must have been in advance of condemnation proceedings at least a bona fide effort on the part of the condemnor to agree with its adversary, the land owner, in advance 'upon the value of the land or the damages.'"[42] Five years later, the court of appeals in *City of Houston v. Derby* said in dicta that for the condemnor "to vest the county court with *jurisdiction* to condemn appellees' land, it had to first allege, and

---

**38.** Tex. Prop.Code § 21.012(a).

**39.** *Id.* § 21.012(b).

**40.** *See* Act of Aug. 28, 1961, 57th Leg., R.S., ch. 105, § 1, 1961 Tex. Gen. Laws 203, 203; Act of Mar. 7, 1934, 43d Leg., 2d C.S., ch. 37, § 1, 1934 Tex. Gen. Laws 89, 89; Act. of Apr. 22, 1905, 29th Leg., ch. 73, §§ 2–13, 1905 Tex. Gen. Laws 101, 101–02; Act of Apr. 28, 1903, 28th Leg., 1st C.S., ch. V, §§ 2–3, 1903

Tex. Gen. Laws 10, 10–11; Act of Mar. 26, 1885, ch. 56, 1885 Tex. Gen. Laws 54, 54; Tex.Rev.Civ. Stat. arts. 4182–92, p. 603 (1879); Paschals Ann. Digest, 5th ed., art. 4922 (Laws of Tex. Vol. 1, p. 822).

**41.** 175 S.W.2d 707, 709 (Tex.Civ.App.-Galveston 1943, writ ref'd w.o.m.).

**42.** *Id.* at 710.

then during the proceedings prove, that it had failed to agree with the appellees on the value of their land to be taken."[43] This Court refused the application for writ of error in *Derby*, giving that opinion the same force and effect as an opinion of this Court. A number of other courts of appeals have similarly held or said in dicta that the "unable [or failure] to agree" provision is jurisdictional or that failure to comply renders the condemnation proceeding void.[44]

■ Other decisions of this Court, however, are inconsistent with the proposition that compliance with the "unable to agree" provision is necessary to bestow subject matter jurisdiction. Subject matter jurisdiction cannot be waived.[45] But we have indicated that a landowner can waive any right to complain that there was no effort to agree. We have said that if the owner has accepted the commissioners' award and withdrawn the money from the registry of the court, the court has jurisdiction to adjudicate either the landowner's or the State's contest of the commissioners' award,[46] even though there was no proof of an effort to agree with the owner.[47] Another decision, in which we refused the application for writ of error, said that if "the owner of the land sought to be condemned makes his appearance before the special commissioners and resists the condemnation proceedings upon the merits, he thereby waives whatever lack of efforts to reach a settlement there might have been."[48] Several other courts of appeals

**43.** 215 S.W.2d 690, 692 (Tex.Civ.App.-Galveston 1948, writ ref'd) (emphasis added).

**44.** *ExxonMobil Pipeline Co. v. Harrison Interests, Ltd.,* 93 S.W.3d 188, 192 (Tex.App.-Houston [14th Dist.] 2002, pet. filed); *McKinney Indep. Sch. Dist. v. Carlisle Grace, Ltd.,* 83 S.W.3d 205, 208 (Tex.App.-Dallas 2002, no pet.); *Mercier v. MidTexas Pipeline Co.,* 28 S.W.3d 712, 720 (Tex.App.-Corpus Christi 2000, pet. denied); *Marburger v. Seminole Pipeline Co.,* 957 S.W.2d 82, 89 (Tex.App.-Houston [14th Dist.] 1997, pet. denied); *Precast Structures, Inc. v. City of Houston,* 942 S.W.2d 632, 636 (Tex.App.-Houston [14th Dist.] 1996, no writ); *State v. Schmidt,* 894 S.W.2d 543, 545 n. 1 (Tex.App.-Austin 1995, no writ); *Tex.–N.M. Power Co. v. Hogan,* 824 S.W.2d 252, 254 (Tex.App.-Waco 1992, writ denied); *Schlottman v. Wharton County,* 259 S.W.2d 325, 330 (Tex.Civ.App.-Fort Worth 1953, writ dism'd); *Gill v. Falls County,* 243 S.W.2d 277, 280 (Tex.Civ.App.-Waco 1951, no writ); *Doughty v. Defee,* 152 S.W.2d 404, 410 (Tex.Civ.App.-Amarillo 1941, writ ref'd w.o.m.); *Cook v. Ochiltree County,* 64 S.W.2d 1018, 1020 (Tex.Civ.App.-Amarillo 1933, no writ); *Watt v. Studer,* 22 S.W.2d 709, 711 (Tex.Civ.App.-Amarillo 1929, no writ); *Clements v. Fort Worth & D.S.P. Ry. Co.,* 7 S.W.2d 895, 897 (Tex.Civ.App.-Amarillo 1928, no writ); *Porter v. City of Abilene,* 16 S.W. 107, 107 (Tex.Ct.App.1890, no writ); *see also Jenkins v. Jefferson County,* 507 S.W.2d 296, 298

(Tex.Civ.App.-Beaumont 1974, writ ref'd n.r.e.) (stating that courts have "no authority to enter a decree of condemnation" unless the condemnor has made a "bona fide attempt" to agree with the landowner); *Isaac v. City of Houston,* 60 S.W.2d 543, 545 (Tex.Civ.App.-Galveston 1933, writ dism'd) (holding that court was "without authority" to render a judgment in a condemnation proceeding when there was no proof that parties were unable to agree on damages).

**45.** *Dubai Petroleum Co. v. Kazi,* 12 S.W.3d 71, 76 (Tex.2000); *Fed. Underwriters Exch. v. Pugh,* 141 Tex. 539, 174 S.W.2d 598, 600 (1943).

**46.** *Amason v. Natural Gas Pipeline Co.,* 682 S.W.2d 240, 242 (Tex.1984); *State v. Jackson,* 388 S.W.2d 924, 925 (Tex.1965); *see also Coastal Indus. Water Auth. v. Celanese Corp. of Am.,* 592 S.W.2d 597, 599 (Tex.1979) (landowner who withdrew the special commissioners' award from the court's registry waived its challenge to the condemnor's right to take the subject property but could continue to litigate the issue of compensation).

**47.** *Jackson,* 388 S.W.2d at 925.

**48.** *Jones v. City of Mineola,* 203 S.W.2d 1020, 1023 (Tex.Civ.App.-Texarkana 1947, writ ref'd).

have likewise said that a landowner can waive the right to complain about the existence or adequacy of an effort to agree by appearing before the commissioners and resisting condemnation or contesting the amount of damages,[49] or by withdrawing the Commission's award from the court's registry.[50] In those cases, the only issue to be tried was the owner's complaint that the damages were inadequate.[51] At least two decisions have also held that any complaint about efforts to agree is a matter that must be plead by the owner or it is waived,[52] even if the evidence establishes as a matter of law that there was no effort to agree.[53]

The inconsistency between decisions saying that the "unable to agree" provision implicates subject matter jurisdiction and those saying failure to comply can be waived may have led this Court to note in *State v. Dowd,*[54] forty-five years after the decision in *Derby,*[55] that "[w]e express no opinion on whether the trial court would have lacked jurisdiction of the action had the State failed to negotiate in good

faith."[56] In *Dowd,* the court of appeals had concluded that, absent pleading and proof that the parties were "unable to agree," the trial court lacked jurisdiction, and that a fact question existed that should be resolved by the trial judge.[57] The trial court had dismissed the proceedings. This Court held that there was no fact question and that the trial court should not have dismissed the proceedings.[58]

If the "unable to agree" requirement were necessary to confer subject matter jurisdiction, then judgments in condemnation proceedings would be subject to collateral attack.[59] In construing other mandatory statutory provisions, we have observed that " 'the modern direction of policy is to reduce the vulnerability of final judgments to attack on the ground that the tribunal lacked subject matter jurisdiction.' "[60] We thus held in *Dubai Petroleum Co. v. Kazi* that section 71.031(a) of the Texas Civil Practice and Remedies Code, which permits foreign plaintiffs to sue in Texas courts for per-

49. *Brown v. Lower Colo. River Auth.,* 485 S.W.2d 369, 371 (Tex.Civ.App.-Austin 1972, no writ); *City of Austin v. Hall,* 446 S.W.2d 330, 336 (Tex.Civ.App.-Austin 1969), *rev'd on other grounds,* 450 S.W.2d 836 (Tex.1970); *Lohmann v. Natural Gas Pipeline Co. of Am.,* 434 S.W.2d 879, 882 (Tex.Civ.App.-Beaumont 1968, writ ref'd n.r.e.); *Aronoff v. City of Dallas,* 316 S.W.2d 302, 306 (Tex.Civ.App.-Texarkana 1958, writ ref'd n.r.e.).

50. *McConnico v. Tex. Power & Light Co.,* 335 S.W.2d 397, 400 (Tex.Civ.App.-Beaumont 1960, writ ref'd n.r.e.).

51. *See supra* notes 49–50; *see also Coastal Indus. Water Auth.,* 592 S.W.2d at 599.

52. *Jenkins v. Jefferson County,* 507 S.W.2d 296, 298 (Tex.Civ.App.-Beaumont 1974, writ ref'd n.r.e.); *Dyer v. State,* 388 S.W.2d 226, 230 (Tex.Civ.App.-El Paso 1965, no writ).

53. *Dyer,* 388 S.W.2d at 230. *But see County of Nueces v. Rankin,* 303 S.W.2d 455, 457 (Tex.Civ.App.-Eastland 1957, no writ) (hold-

ing that it was incumbent on the condemnor to plead that the owner waived lack of efforts to agree).

54. 867 S.W.2d 781 (Tex.1993).

55. 215 S.W.2d 690, 692 (Tex.Civ.App.-Galveston 1948, writ ref'd).

56. 867 S.W.2d at 783 n. 1.

57. *State v. Hipp,* 832 S.W.2d 71, 75 (Tex.App.-Austin 1992), *rev'd in part sub. nom., State v. Dowd,* 867 S.W.2d 781 (Tex.1993).

58. *Dowd,* 867 S.W.2d at 783.

59. *See Dubai Petroleum Co. v. Kazi,* 12 S.W.3d 71, 76 (Tex.2000); *see also* RESTATEMENT (SECOND) OF JUDGMENTS § 12 cmt. b (1982).

60. *Dubai,* 12 S.W.3d at 76 (quoting RESTATEMENT (SECOND) OF JUDGMENTS § 11 cmt. e (1982)).

sonal injuries or wrongful death occurring in a foreign state or country if the decedent or injured party's country of citizenship has "equal treaty rights" with the United States,[61] was not jurisdictional, but was a requirement that should be met before a trial court proceeds.[62]

In so holding, we acknowledged that some of the Court's earlier opinions, including *Mingus v. Wadley*,[63] differentiated between common-law claims and statutory claims when considering whether a trial court had jurisdiction over a particular matter:

> "The general rule is where the cause of action and remedy for its enforcement are derived not from the common law but from the statute, the statutory provisions are mandatory and exclusive, and must be complied with in all respects or the action is not maintainable." ...
>
> " '[T]here is no presumption of jurisdiction where a court, although it is one of general jurisdiction, exercises special statutory powers in a special statutory manner or otherwise than according to the courts of the common law, since under such circumstances the court stands with reference to the special power exercised on the same footing with courts of limited and inferior jurisdiction.' "[64]

We determined, however, that this dichotomy between common-law and statutory actions was antiquated and problematic, stating: "When, as here, it is difficult to tell whether or not the parties have satisfied the requisites of a particular statute, it seems perverse to treat a judgment as perpetually void merely because the court or the parties made a good-faith mistake in interpreting the law." [65] We overruled *Mingus* "to the extent that it characterized the plaintiff's failure to establish a statutory prerequisite as jurisdictional." [66]

We see no substantive distinction between the nature of the statutory requirement at issue in *Dubai* and section 21.012's "unable to agree" requirement. As at least one other court has recognized, in construing a statutory requirement that a condemning authority make reasonable, good faith efforts to negotiate as a prerequisite to commencing condemnation proceedings, " 'jurisdiction' has proven to be a 'word of elastic, diverse, and disparate meanings.' " [67] That court likewise concluded that a requirement for negotiations "is not a restriction on the court's subject matter jurisdiction." [68] Thus, although section 21.012's requirements are mandatory, the trial courts in these consolidated cases had jurisdiction over the condemnation proceedings regardless of whether the condemnors satisfied the requirement that the parties "are unable to agree on the damages." We therefore disapprove of those court of appeals decisions that have held or suggested that these statutory requirements are jurisdictional.[69]

---

61. *Id.* at 73–74 (citing Tex. Civ. Prac. & Rem. Code § 71.031(a)).

62. *Id.* at 76–77.

63. 115 Tex. 551, 285 S.W. 1084 (1926), *overruled by Dubai Petroleum Co. v. Kazi*, 12 S.W.3d 71 (Tex.2000).

64. *Kazi*, 12 S.W.3d at 75–76 (quoting *Mingus*, 285 S.W. at 1087, 1089 (Tex.1926) (quoting 15 Corpus Juris *Courts*, § 148(c), at 831–32)).

65. *Id.* at 76.

66. *Id.*

67. *Minto v. Lambert*, 870 P.2d 572, 575 (Colo. Ct.App.1994, cert.denied).

68. *Id.* at 576.

69. *See* cases cited *supra* note 44.

■ Having determined that section 21.012's requirements are not jurisdictional, we must determine the appropriate remedy when a condemnor fails to meet those requirements and a landowner has timely objected. Because the statute is silent as to the consequences for noncompliance, we look to the statute's purpose in determining the proper remedy.[70] The purpose of section 21.012's "unable to agree" requirement is to " 'forestall litigation and to prevent needless appeals to the courts when the matter may have been settled by negotiations between the parties.' "[71] In considering the remedy for noncompliance with the requirements of statutes with similar purposes, we have repeatedly held that dismissal is not necessary to achieve such a purpose.[72] Rather, the statute's goal—avoidance of protracted litigation—can be accomplished by requiring an abatement of the proceeding until the requirement that the parties "are unable to agree" has been satisfied.[73] While the condemnation proceedings are abated, the parties can engage in negotiations for the land to be condemned, just as they would have done before the proceedings were initiated. We therefore conclude that if a landowner objects in a pleading that there has been no offer, and a trial court finds that the requirement that the parties are "unable to agree on the damages"[74] has not been met, the trial court should abate the proceedings for a reasonable period of time to allow the condemnor to satisfy the "unable to agree" requirement. If at the end of a reasonable period of time, the condemnor has not made an offer, the condemnation proceeding should be dismissed.

## IV

■ The procedural vehicle chosen by the condemnors to determine whether they were "unable to agree" with the landowners in the cases before us was a motion for partial summary judgment. Trial courts

---

**70.** *Albertson's, Inc. v. Sinclair*, 984 S.W.2d 958, 961 (Tex.1999) (citing *Hines v. Hash*, 843 S.W.2d 464, 467 (Tex.1992), and *Schepps v. Presbyterian Hosp. of Dallas*, 652 S.W.2d 934, 938 (Tex.1983)).

**71.** *County of Nueces v. Rankin*, 303 S.W.2d 455, 457 (Tex.Civ.App.-Eastland 1957, no writ) (citing *Fort Worth Indep. Sch. Dist. v. Hodge*, 96 S.W.2d 1113 (Tex.Civ.App.-Fort Worth 1936, no writ)); *see also Schlottman v. Wharton County*, 259 S.W.2d 325, 330 (Tex. Civ.App.-Fort Worth 1953, writ dism'd) (purpose of requirement is to save time and expense when agreement is possible); *Clements v. Fort Worth & D.S.P. Ry. Co.*, 7 S.W.2d 895, 897 (Tex.Civ.App.-Amarillo 1928, no writ).

**72.** *See, e.g., Hines*, 843 S.W.2d at 468–69 (purpose of Deceptive Trade Practices Act's notice requirement is "to discourage litigation and encourage settlements of consumer complaints"); *Schepps*, 652 S.W.2d at 938 (purpose of the Medical Liability and Insurance Improvement Act's pre-suit notice requirement is "to encourage pre-suit negotiations so as to avoid excessive cost of litigation").

**73.** *Sinclair*, 984 S.W.2d at 961–62 (holding that failure to comply with statutory requirement that a petition for judicial review of a workers' compensation decision be filed simultaneously with the court and the Workers' Compensation Commission warrants abatement, not dismissal, of the action); *Hines*, 843 S.W.2d at 469 (holding that abatement is the appropriate remedy for plaintiff's failure to comply with the Deceptive Trade Practices Act's pre-suit notice provision); *State v. $435,000.00*, 842 S.W.2d 642, 645 (Tex.1992) (holding that compliance with the statutory requirement that a hearing be conducted within 30 days of the filing of an answer in a forfeiture action was mandatory, but noncompliance did not necessitate dismissal of the action); *Schepps*, 652 S.W.2d at 938 (holding that abatement is the appropriate remedy for a plaintiff's failure to comply with the Medical Liability and Insurance Improvement Act's pre-suit notice requirement).

**74.** Tex. Prop.Code § 21.012.

can, however, resolve "unable to agree" issues through other procedural vehicles, as they resolve many threshold pre-trial matters, including ruling on a plea in abatement.[75] Because the issue was raised in the present cases in motions for partial summary judgment asserting that the condemnors established as a matter of law that they were "unable to agree" with the landowners, we must determine whether there are any questions of fact.

The landowners contend that there is a fact question in each case about whether the condemnors made a "good faith" effort to agree on the damages. Some cases have used the terms "good faith" negotiation[76] and "bona fide" effort[77] in conjunction with the "unable to agree" requirement. However, with some exceptions,[78] the case law has required minimal evidence to satisfy the "unable to agree" requirement. For example, in *Schlottman v. Wharton County*, the court held that an offer by the condemnor that is rejected or ignored is enough:

[A]ll that is required to comply with the statute is the making of an offer by a county, and ... nothing affirmative is required to be done by the landowner. In other words, in a case where the landowner "stands mute" and neither accepts nor rejects the offer so made to him by or in behalf of a county, the law will construe his silence [as] a rejection of the offer, and that such a showing constitutes "a failure to agree" on the part of the parties.[79]

Similarly, the court in *Malone v. City of Madisonville* held:

If the law required that both the landowner and the party desiring to condemn should make an effort to agree on the amount of damages, before such condemnation proceedings could be instituted, then all the landowner would have to do to avoid condemnation would be to refuse to make any effort to agree with the party desiring to condemn on the damages.[80]

75. See, e.g., Anderson v. Clajon Gas Co., 677 S.W.2d 702, 706 (Tex.App.-Houston [1st Dist.] 1984, no writ).

76. See, e.g., Lapsley v. State, 405 S.W.2d 406, 411 (Tex.Civ.App.-Texarkana 1966, writ ref'd n.r.e.).

77. See, e.g., Mercier v. MidTexas Pipeline Co., 28 S.W.3d 712, 720 (Tex.App.-Corpus Christi 2000, pet. denied); State v. Hipp, 832 S.W.2d 71, 78 (Tex.App.-Austin 1992), rev'd on other grounds sub. nom., State v. Dowd, 867 S.W.2d 781 (Tex.1993); Jenkins v. Jefferson County, 507 S.W.2d 296, 298 (Tex.Civ.App.-Beaumont 1974, writ ref'd n.r.e.); Curfman v. State, 240 S.W.2d 482, 484 (Tex.Civ.App.-Dallas 1951, writ ref'd n.r.e.).

78. In dicta, the court in Lapsley v. State said: "This statute contemplates good faith negotiation. Such negotiation would require an effort by the condemnor to investigate all aspects of value and prepare work sheets and recapitulation sheets when necessary or con-

venient in furtherance of the statutory settlement objective." 405 S.W.2d at 411; see also Precast Structures, Inc. v. City of Houston, 942 S.W.2d 632, 635–36 (Tex.App.-Houston [14th Dist.] 1996, no writ) (examining validity of condemnor's legal theory regarding damages and evidence consistent with that theory in determining if a "bona fide" offer was made by the condemnor); Hipp, 832 S.W.2d at 78–79 (same).

79. 259 S.W.2d 325, 330 (Tex.Civ.App.-Fort Worth 1953, writ dism'd); see also Pete–Rae Dev. Co. v. State, 353 S.W.2d 324, 325 (Tex. Civ.App.-Eastland 1962, writ ref'd n.r.e.); Curfman, 240 S.W.2d at 484.

80. 24 S.W.2d 483, 485 (Tex.Civ.App.-Waco 1929, no writ); see also W.T. Waggoner Estate v. Townsend, 24 S.W.2d 83, 86 (Tex.Civ.App.-Amarillo 1929, no writ) (holding that when owner was asked "what he was willing to settle the matter for" and the price was more than the condemnor would pay, this satisfied statutory requirement).

In *McKinney Independent School District v. Carlisle Grace, Ltd.*, the court held that the fact that a condemning authority did not wait for a counteroffer from the landowner is "no evidence to support the trial court's non-finding on the unable-to-agree requirement."[81] That court also held, "We likewise reject [landowners'] contention that [condemnor's] failure to provide them with the appraisal ... supports a negative finding on the unable-to-agree requirement."[82] The landowners in the current proceedings argue that there is at least an inference that they were willing to continue to negotiate, even though they either rejected or ignored offers that the condemnors made. But we, like the court in *McKinney*, reject such a contention.[83]

We are also persuaded that the dollar amount of the offer generally should not be scrutinized. The decisions that have implicitly or explicitly concluded that the dollar amount of the condemnor's offer should not be compared with other indications of value are consistent with the statutory scheme, which does not contemplate such an examination.[84] Nor does the statute contemplate a subjective inquiry into "good faith." As discussed earlier, the purpose of the statute is "to forestall litigation and to prevent needless appeals."[85] An inquiry into the subjective "good faith" of a condemnor's offer would be antithetical to this purpose. First, independent commissioners will have reached a determination of damages before the landowner may even raise the "unable to agree" objection. If the landowner accepts the commissioners' assessment, the matter is at an end. It is only after the landowner has rejected any offer by the condemnor, and after independent commissioners reach a conclusion and it is clear that litigation is going to proceed, that the landowners can raise the "unable to agree" issue.[86] Second, whether an offer by a condemning authority was made in "good faith" would, in most cases, be determined in large measure by the reasonable market value of the property sought to be condemned or the amount of inverse condemnation damages, or both. The inquiry in the trial court's condemnation proceeding—to determine the reasonable market value of the property sought to be condemned and any inverse condemnation damages—would thus be largely duplicative. The purpose of section 21.012's requirement that the parties be "unable to agree" is not to require a trial on reasonable market value before the condemnation trial may begin. The condemnation trial will determine the property's value and any damage to the remainder. No purpose would be served by delaying that determination to first decide whether the condemning authority's offer was so low and made under such circumstances that it

---

81. 83 S.W.3d 205, 209 (Tex.App.-Dallas 2002, no pet.).

82. *Id.*

83. *Id.* (rejecting argument that because landowners "continued to express an interest in negotiating," the parties were not unable to agree).

84. *See, e.g., City of Houston v. Derby,* 215 S.W.2d 690, 693 (Tex.Civ.App.-Galveston 1948, writ ref'd) ("The only purpose for which the sums offered during negotiations can be looked to is to determine how the costs shall be cast."). *But see Mercier v. MidTexas Pipeline Co.,* 28 S.W.3d 712, 720 (Tex.App.-Corpus Christi 2000, pet. denied) (finding that because condemnor's offer was twice the Appraisal District's appraisal, the offer was "bona-fide").

85. *Hubenak,* 65 S.W.3d at 797 (quoting *County of Nueces v. Rankin,* 303 S.W.2d 455, 457 (Tex.Civ.App.-Eastland 1957, no writ)).

86. *See* cases cited *supra* note 36.

could not have been made in "good faith." At the end of the day, the result would be the same if two trials rather than just one were held. The landowner will receive no more and no less than the amount awarded as a result of the condemnation proceedings, even if the condemnor's pre-suit offer was not made in "good faith." It is not necessary to have two trials to reach the ultimate and only determination contemplated by the statute, which is a determination of the value of the property condemned.

The condemnors have established that they made offers to each of the landowners before filing condemnation proceedings. Those offers were rejected or ignored by the landowners. That is enough to satisfy section 21.012's requirement that the parties were "unable to agree." For the reasons to which we now turn, we find no merit in the landowners' remaining bases for contending that the condemnors have not established as a matter of law the "unable to agree" requirement.

## V

■ The landowners do not contend that the condemnors' final offers included land or physical property in addition to or different from that described in the condemnation petition. But the landowners have consistently pointed to the fact that the condemnors' final offers all included three matters that were not explicitly included in the condemnation petitions and have argued that the condemnors could not legally acquire them by condemnation. Thus, the landowners contend, the condemnors never made offers for what they actually sought to condemn or could legally condemn, and therefore, have not met

section 21.012's "unable to agree" requirement. The three matters at issue are the right to transport oil and other products, the right to assign the easements, and a warranty of title to the easement.

We have found only one Texas decision that bears directly on the question raised by the landowners, and that case was decided after, and relies on, some of the court of appeals decisions under review here.[87] However, decisions from other jurisdictions are instructive. The Illinois Supreme Court held that a condemnor had shown "a good faith attempt to negotiate" in spite of the fact that the condemnor had sought greater rights through negotiations than it condemned.[88] That court said:

> It is true that the instrument which the plaintiff first sought the defendants to execute was broader than the ultimate right condemned, in that it involved possible damage to, and entry upon the surface of defendants' land. Nevertheless, on this record, we think plaintiff has shown a good faith attempt to negotiate. The wide spread between the offering price of the plaintiff and the demand of the defendants, based on their differing theories of value for the storage rights, shows that no practical solution could have been reached through further negotiation.[89]

The Oregon Supreme Court held that an "unable to agree" requirement was met even though the condemnor offered to pay for easements that only permitted the owner to cross and recross the road, but in the condemnation proceedings, the owner was permitted to use the road through a

---

**87.** *ExxonMobil Pipeline Co. v. Harrison Interests, Ltd.,* 93 S.W.3d 188, 196–97 (Tex.App.-Houston [14th Dist.] 2002, pet. filed).

**88.** *Peoples Gas Light & Coke Co. v. Buckles,* 24 Ill.2d 520, 182 N.E.2d 169, 174 (1962).

**89.** *Id.*

reservation.[90] The Oregon court concluded that it was evident from the litigation itself that the parties could not agree, and the court also noted that the owner had demanded $70,000 while the condemnor offered $4,000, concluding, "it is hard for us to believe that there is any chance that the parties could reach an agreement outside of court." [91]

The New Jersey Supreme Court held that a challenge to the "bona fides of the offer to purchase" had no merit even though the pre-condemnation offer was to purchase a fee simple interest and the law did not allow a fee simple estate to be acquired by condemnation.[92]

An Indiana court has held that statutory requirements were met even though the condemnor's offer would have required an express merger of a former easement, with all rights under it to be governed by the new easement.[93] The landowners argued that the condemnor was attempting to "winkle [sic] ... away" the landowners' rights in "old litigation." [94] The court said that the "obvious purpose of the language [in the pre-condemnation offer] was to clear up title problems growing out of the previous easements," which could be accepted or rejected by the landowners, and that this additional matter did not render the offer "inadequate." [95]

That same Indiana court held that a condemnor had met statutory requirements even though the condemnation complaint was specific that there would be four towers, while the pre-litigation offer was not specific as to the number of towers and required certain rights of ingress and egress and removal of endangering obstructions, none of which were part of the condemnation proceedings.[96]

The concurring opinion in the instant case cites another Indiana case, *Dzur v. Northern Indiana Public Service Co.*,[97] and another New Jersey Supreme Court case, *Central R. Co. of New Jersey v. The Hudson Terminal Railway Co.*,[98] for the proposition that a pre-condemnation offer must mirror the rights described in the condemnation petition before it can be said that the parties were unable to agree on the damages for the property to be condemned.[99] Those cases, however, are distinguishable because the condemnors sought to purchase more land than they were legally entitled to condemn. In *Dzur*, the condemnor offered to purchase a 200–foot–wide utility easement and later sought to condemn the same property. The Indiana Supreme Court determined that the condemnor was only entitled to a 150–foot–wide easement and held that the condemnation proceedings could not recommence until the condemnor made a separate offer for a 150–foot–wide easement.[100] In *Hudson Terminal*, the New Jersey court determined that a statute only authorized a railroad to condemn land

90. *Moore Mill & Lumber Co. v. Foster*, 216 Or. 204, 336 P.2d 39, 60 (1959).

91. *Id.*

92. *Camden Forge Co. v. County Park Commn. of Camden County*, 14 N.J. Misc. 626, 186 A. 519, 520–21 (1936).

93. *Oxendine v. Pub. Serv. Co. of Ind.*, 423 N.E.2d 612, 621–22 (Ind.Ct.App.1980).

94. *Id.* at 622.

95. *Id.*

96. *Blaize v. Pub. Serv. Co. of Ind.*, 158 Ind. App. 204, 301 N.E.2d 863, 865–66 (1973).

97. 257 Ind. 674, 278 N.E.2d 563 (1972).

98. 46 N.J.L. 289 (1884).

99. 141 S.W.3d at 194 (JEFFERSON, J., concurring).

100. 278 N.E.2d at 566.

up to 100 feet in width, but the condemnor had sought to condemn much more land. The court said that the condemnation proceedings could not commence until the condemnor made an offer for only a 100–foot strip of land.[101] Unlike *Dzur* and *Hudson Terminal*, the tracts of land subject to condemnation in the cases before us today are the same tracts of land identified in the condemnors' final offers to the landowners.

In the consolidated cases before us, the condemnors offered summary judgment evidence of their contacts with and offers to the landowners, counter-offers by the landowners in some cases, and the fact that none of the landowners accepted any offer.[102] None of the three matters in the proposed right-of-way agreements that are at issue in this appeal were at issue when the pre-condemnation negotiations took place. The condemnors thus met their burden of submitting evidence that the parties were unable to agree. The landowners did not respond with any contention or evidence of the value of the three matters about which they now complain or evidence that the owners would have accepted the offers if those matters had been omitted from the offers. This lack of controverting evidence was noted by the courts of appeals in *Cusack Ranch*[103] and the consolidated *Hubenak* cases (*Hubenak 1, Hubenak 2, Wenzel,* and *Kutach*).[104]

The concurrence suggests that our holding today would allow a condemnor to offer to buy 500 acres and then condemn " 'only a small strip in the corner of the property.' "[105] We disagree. It is the law in this state that the offer must be for the same tract of land described in the condemnation petition.[106] In the cases before us

---

101. 46 N.J.L. at 294.

102. In the interest of brevity, the offers in each case are summarized:
*Hubenak 1* (02–0213): Condemnor's highest combined offer was $6,089.80. The landowners indicated they *might* sell for significantly more.
*Hubenak 2* (02–0214): Condemnor's highest combined offer was $24,602.65. The landowners indicated they *might* sell for significantly more.
*Wenzel* (02–0215): Condemnor's highest offer was $14,620.38. The landowners refused to sell regardless of any offer.
*Kutach* (02–0216): The landowner said it would sell for $500.00 per foot. The condemnor countered with $6,360.00 and then offered to re-route the pipeline and pay $4,632.00.
*Cusack Ranch* (02–0217): Condemnor offered the landowner $17,655.00, but the landowner objected to the amount offered and demanded a re-routing of the pipeline. Condemnor would not agree to re-route, but increased its offer to $25,000.00, which the landowner did not accept.
*Dernehl* (02–0320): Condemnor offered $11,333.00, landowners countered with $120,000.00, and condemnor countered with $13,331.00.

*Wright 1* (02–0321): Condemnor offered $16,228.80 and $17,000.00. The landowners refused to sell despite the offers.
*Wright 2* (02–0326): Condemnor's highest offer in this case was $18,000.00. The landowners refused to sell despite the offer.
*Cusack* (02–0359): Condemnor's highest offer was $13,941.00. The landowners countered that they wanted approximately $35,000.00 and the line buried 48 inches deep.

103. 71 S.W.3d at 400.

104. 65 S.W.3d at 799, 801.

105. 141 S.W.3d at 195 (JEFFERSON, J., concurring) (quoting *Dernehl,* 71 S.W.3d at 861).

106. *See, e.g., Brinton v. Houston Lighting & Power Co.,* 175 S.W.2d 707, 709–10 (Tex.Civ. App.-Galveston 1943, writ ref'd w.o.m.) (holding that an offer to purchase an easement that did not mention any width but merely was for sixty cents per rod did not establish the inability to agree on damages for an eighty-foot wide easement); *see also Blaize v. Pub. Serv. Co. of Ind.,* 158 Ind.App. 204, 301 N.E.2d 863, 865 (1973) (indicating that before instituting condemnation proceedings, there must

today, the parcels of land sought in the pre-condemnation negotiations were the same parcels that were the subject of the subsequent condemnation proceedings. The only difference between the offers and the condemnation petitions was that the three matters identified in the proposed right-of-way agreements were not expressly included in the latter. There is, however, no indication that these three matters were material to the negotiations or played any part in the parties' inability to agree "on the amount of damages." [107]

The condemnors' proposed right-of-way agreements would have given the condemnors the right to transport "gas, oil, petroleum, products, or any other liquids, gases or substances which can be transported through a pipeline." The condemnors sought to condemn only a natural gas pipeline. We note, however, that a common carrier who owns, operates, or manages a pipeline for the transportation of crude oil has the right of eminent domain,[108] and the transportation of natural gas as opposed to oil was not at issue in the negotiations. The concurrence implies that the condemnors could have utilized the pipeline to transport radioactive material even though the landowner might not have consented to a pipeline carrying such a substance.[109] The concurrence provides no authority that would support such a broad construction of the right to transport "gas, oil, petroleum, products, or any other liquids, gases or substances which can be transported through a pipeline." Indeed, the authority and general principles of contract interpretation applicable to the construction of private easements suggest the contrary.[110]

The concurrence would nevertheless hold that a condemnor cannot establish that it was "unable to agree" with the landowner on damages unless the physical property and intangible property rights the condemnor sought to purchase mirror the exact physical property and intangible property rights explicitly included in a subsequent condemnation proceeding. The concurrence says "[t]his requirement is neither burdensome nor complex." [111] We disagree.

be negotiations for the property to be condemned, which requires a "meeting of the minds" as to the physical property "and not necessarily upon any of the more incorporeal rights").

**107.** Tex. Prop.Code § 21.012(a).

**108.** Tex. Nat. Res.Code §§ 111.002(1), (2), (3), .019(a).

**109.** 141 S.W.3d at 195 (Jefferson, J., concurring).

**110.** *See Marcus Cable Assocs., L.P. v. Krohn,* 90 S.W.3d 697, 701–02, 706 (Tex.2002) (outlining the basic principles for construing and interpreting a private easement and holding that an easement permitting its holder to use private property to construct and maintain "an electric transmission or distribution line or system" did not allow the easement to be used for cable-television lines); *Right of Way*

*Oil Co. v. Gladys City Oil, Gas & Mfg. Co.,* 106 Tex. 94, 157 S.W. 737, 739–40 (1913) (applying the *ejusdem generis* rule of construction to conclude that the phrase "all the timber, earth, stone and mineral existing or that may be found within the right of way" in a private deed did not include oil where the purpose of the grant was "constructing, operating and maintaining" a railroad and the general words "and mineral" were preceded by the more specific terms "timber, earth, stone"); *cf. Hilco Elec. Coop. v. Midlothian Butane Gas Co., Inc.,* 111 S.W.3d 75, 81 (Tex.2003) (observing that the rule of "ejusdem generis" "provides that when words of a general nature are used in connection with the designation of particular objects or classes of persons or things, the meaning of the general words will be restricted to the particular designation").

**111.** 141 S.W.3d at 196 (Jefferson, J., concurring).

While it is a simple matter to describe with precision the physical property that would be subject to the condemnation proceeding, inclusion of intangible property rights in a condemnation petition does not easily lend itself to the "bright-line rule" proposed by the concurrence. The intangible rights a condemnor could obtain by an agreement with the landowner may not always parallel the rights the condemnor would obtain by virtue of a judgment (and vice versa) because a contract and a judgment are different animals. For example, although one might not be able to obtain a landowner's obligation to warranty and defend title by condemnation (which we do not decide), a final judgment is in and of itself a degree of warranty,[112] and a condemnor could not precisely capture that type of warranty in a private agreement. With regard to assignments of easements, an easement for a pipeline obtained by a common carrier in an eminent domain proceeding could, at a minimum, be transferred, sold, or conveyed to another common carrier to operate a pipeline as a common carrier without an explicit request for such a right in the condemnation petition.[113] Thus, to require exact symmetry between the purchase offer and the property rights to be condemned could create an impediment to the condemnation process that is not contemplated by the purpose of the "unable to agree" requirement. Generally, it is sufficient that the parties negotiated for the same physical property and same general use that became the subject of the later eminent domain proceeding, even if the more intangible rights sought in the purchase negotiations did not exactly mirror those sought or obtainable by condemnation.

## VI

For the foregoing reasons, we conclude that section 21.012's requirements are not jurisdictional. But, if a condemning entity files a condemnation petition without meeting section 21.012's requirements, and a landowner opposing condemnation timely requests abatement, the trial court should abate the proceedings for a reasonable time to permit the condemnor to satisfy the statutory requirements. We conclude, however, that the condemnors in the cases before us today complied with section 21.012's requirement that the parties be "unable to agree on damages." Accordingly, we (1) affirm the judgments of the courts of appeals in *Hubenak 1, Hubenak 2, Wenzel, Kutach,* and *Cusack Ranch;* (2) affirm the court of appeals' judgment in *Cusack* and remand that case to the trial court for further proceedings; and (3) reverse the court of appeals' judgments in *Dernehl, Wright 1,* and *Wright 2* and remand those cases to their respective trial courts for further proceedings.

Justice JEFFERSON filed a concurring opinion.

Justice O'NEILL and Justice SCHNEIDER did not participate in the decision.

---

112. *See* Tex. Prop.Code § 21.065 ("A judgment of a court under this chapter vests a right granted to a condemnor.").

113. *See* Tex. Nat. Res.Code § 111.0194(a) (describing presumption applicable to certain grants or condemnation judgments pertaining to easements held by a "common carrier pipeline, or a successor in interest to the common carrier pipeline"); Tex. Prop.Code § 12.014 (governing transfer of a judgment or cause of action); *see also Valero Eastex Pipeline Co. v. Jarvis,* 990 S.W.2d 852, 855 (Tex. App.-Tyler 1999, pet. denied) (stating that "pipeline easements are assignable in Texas" and holding that condemnor could assign its interest in a condemnation proceeding or judgment pursuant to Tex. Prop.Code § 12.014).

Justice Jefferson, concurring.

In each of these cases, the landowners have asserted that the condemnors failed to satisfy the unable-to-agree requirement prior to filing suit. I agree with them. I also agree with the Court that the requirement is not jurisdictional and that, when the condemnor has not shown an inability to agree, the case should be abated for a reasonable time until the condemnor makes an offer to purchase the property. Under the unique circumstances of these cases, however, abatement would serve no purpose. Accordingly, I join parts I through III of the Court's opinion and its judgments.

## I

### The "Unable to Agree" Requirement

The Property Code provides that, before a condemnation suit is filed, the condemnor must be "unable to agree with the owner of the property on the amount of damages," and the condemnor must specifically plead that inability in its petition. TEX. PROP.CODE § 21.012. This requirement was intended "to forestall litigation and to prevent needless appeals to the courts when the matter may have been settled by negotiations between the parties." *County of Nueces v. Rankin*, 303 S.W.2d 455, 457 (Tex.Civ.App.—Eastland 1957, no writ).

In each of the cases we review today, the condemnors' pre-suit offers included a "FINAL OFFER RIGHT OF WAY AGREEMENT" for "a Natural Gas Pipeline." The offers, made "in an effort to avoid further expense or litigation," concluded: "If you elect to reject this offer, [the condemnor] may institute a condemnation suit in [a designated court], *to ac-*

*quire the rights described in the Right of Way Agreement.*" (Emphasis added.) The landowners were told that, unless they executed the Right of Way Agreements, the condemnors would petition to condemn the rights those agreements described. But the rights described in the Agreements included provisions that, in fact, the condemnors did not seek to condemn. The Right of Way Agreements sought, for example, the right to transport not just natural gas, but "any other liquids, gases or substances which can be transported through a pipeline." They also sought to obligate the landowners "to warrant and defend title to the easement."

In one of the cases before us, *Hubenak v. San Jacinto Gas Transmission Co.*, 65 S.W.3d 791, the court of appeals initially held that San Jacinto failed to satisfy the unable-to-agree requirement before filing a condemnation petition. In an opinion by Justice O'Connor,[1] the court wrote:

> San Jacinto should have first made an offer only for the rights that were outlined in the board of directors resolution. That offer would have been bona fide. If San Jacinto wanted additional rights, it could have then offered more money for those rights. San Jacinto skipped the first step. It never negotiated for the rights it ultimately sought to condemn. Accordingly, San Jacinto presented no evidence that its offer was in good faith or that negotiations would have been futile.

*Hubenak v. San Jacinto Gas Transmission Co.*, Nos. 1–99–691–CV, 1–99–959–CV, 1–99–1359–CV, 1–99–1360–CV, 2000 WL 1056416 (Tex.App.—Houston [14th Dist.] July 27, 2000) (opinion withdrawn Dec. 13, 2001); *see also Cusack Ranch Corp. v.*

1. After Justice O'Connor's retirement, the court granted the motion for rehearing and withdrew this opinion, deciding that the con-

demnors had satisfied the unable-to-agree requirement. 65 S.W.3d at 801.

*MidTexas Pipeline Co.,* 71 S.W.3d 395, 399 (agreeing that method outlined in initial *Hubenak* decision is the "better approach for the condemnor," although declining to require such an approach).

Similarly, in *MidTexas Pipeline Co. v. Dernehl,* the court of appeals held—correctly, in my opinion—that MidTexas failed to satisfy the unable-to-agree requirement because it did not make an offer encompassing only those rights it could seek to condemn:

> [T]he legislative intent for [the bona fide attempt to agree] requirement was to avoid the necessity of litigation if the parties could reach an agreement on the purchase price of the property to be condemned.... We believe that the Legislature, by making this requirement as a prerequisite to condemnation, intended bona fide negotiations for the property to be condemned, not a negotiation that included other properties or rights beyond the condemnation. At no point does the evidence show in the present case that MidTexas made an offer including only those rights that it was authorized to acquire through a condemnation proceeding. Offers to purchase property that included the property to be condemned but going beyond that in acquiring additional rights or properties is not enough to satisfy a good faith negotiation.

71 S.W.3d at 858. On rehearing, the court added:

> This opinion does not say and does not imply the condemnor cannot make offers for and purchase property and rights which it cannot acquire by condemnation proceedings. However, such an offer should be made separate and apart from the offer made as a prerequisite by law to condemnation. This does not mean the property to be condemned cannot be a part of the separate offer, as long as

the owner is given the opportunity to sell at a specific price only that property subject to condemnation.

> Furthermore, a threat or pretense of condemnation made by the condemnor on land or for rights not subject to condemnation and made in order to obtain additional property or rights constitutes a wrongful act and an abuse of the right of eminent domain.

*Id.* at 861. The court of appeals adopted this same approach in *Wright I* and *Wright II.* 141 S.W.3d 208, 2002 WL 264833 (No. 02–0321 in this Court); 141 S.W.3d 211, 2002 WL 32626070 (No. 02–0326 in this Court).

The initial *Hubenak* decision, *Dernehl, Wright I,* and *Wright II* comport with earlier caselaw suggesting that condemnors must make offers only for property rights they intend to or are able to condemn. In *City of Houston v. Derby,* the court noted that the condemnor "had to first allege, and then during the proceedings prove, that it had failed to agree with the appellees *on the value of their land to be taken.*" 215 S.W.2d 690, 692 (Tex.Civ. App.-Galveston 1948, writ ref'd) (emphasis added). This Court, by assigning *City of Houston* a "writ refused" notation, adopted the court of civil appeals' judgment and reasoning as its own. *See Texas Utils. Elec. Co. v. Timmons, 947 S.W.2d 191, 199 (Tex.1997).* In *State v. Hipp & Dowd,* the court of appeals noted that "[i]n the context of eminent domain proceedings, the offer must not be arbitrary and capricious; rather, it must be based on a reasonably thorough investigation and honest assessment of the amount of just compensation due the landowner *as a result of the taking.*" 832 S.W.2d 71, 78 (Tex.App.—Austin 1992) (emphasis added), *writ denied as to Hipp and rev'd sub nom. on other grounds as to Dowd, State v. Dowd, 867 S.W.2d 781, 783 (Tex.1993).* In

*Ryan v. State*, the court required precondemnation negotiations "as to the amount of damages which would be sustained by him *as a result of the condemnation.*" 21 S.W.2d 597, 598 (Tex.Civ.App.—Waco 1929, no writ) (emphasis added).

Other jurisdictions have adopted a similar approach. The Indiana Supreme Court has held that, before a condemnor can assert "inability to agree," it must have made an offer only for the property sought to be condemned. *See Dzur v. N. Ind. Pub. Serv. Co.*, 257 Ind. 674, 278 N.E.2d 563 (Ind.1972) (holding that landowner's rejection of offer to purchase 200 foot easement did not demonstrate inability to agree, because 150 foot easement was the largest that could be condemned). The court held:

> "An effort to purchase the property sought to be acquired is a condition precedent to the right to maintain an action to condemn. There can be no compliance with this requirement unless the subject of negotiation is clear to both parties, since a meeting of the minds is essential to the existence of a valid contract. If a [condemnor] makes an offer to acquire a particular property, or a specific part thereof, which offer is rejected by the owner of the utility, and if the [condemnor] then undertakes to condemn other or different property than that which it has offered to purchase, it cannot be said that an effort was made to purchase that which it sought to condemn.
>
> . . .
>
> It is conceivable that if the offer to purchase had related to the property which is the subject of the condemnation proceeding, the offer might have been accepted, in which event this litigation would not have been necessary."

*Id.* at 566 (quoting *Ind. Serv. Corp. v. Town of Flora*, 218 Ind. 208, 31 N.E.2d

1015, 1017 (Ind.1941)) (citations omitted); *see also* 6 Julius L. Sackman, Nichols on Eminent Domain, § 24.14[1], at 24–234–35 (3d ed. 2004) ("If the condemnor, after making an offer to acquire a particular property or a specific part thereof, undertook to condemn other and different property or a quantum thereof than it offered to purchase, there was no effort to purchase for the land taken to satisfy the negotiation requirement. Similarly, if the condemnor's offer includes additional properties that it cannot acquire through condemnation proceedings, it has not satisfied the good faith negotiation requirement.").

Likewise, the New Jersey Supreme Court held that a railroad's offer to purchase three parcels of land, when the railroad could legally condemn only a smaller, one-hundred-foot strip of land, was not an offer sufficient to satisfy the requirements for instituting a condemnation proceeding:

> If, then, the petitioner has not power to condemn all the land described in the petition, can these proceedings be maintained for so much as is within the hundred-feet strip? A single consideration shows that the proceedings must stand or fall *in toto*. Before applying to the justice for commissioners, the company must have been unable to agree with the owner for the purchase of the land required. The petition avers that the company could not agree with the owners as to the price of all the lands demanded; but it by no means follows that a bargain could not have been made for the sale of the hundred-feet strip. The owners are entitled to have an opportunity for such a contract presented before their land can be taken by condemnation. Hence the entire proceeding is illegal.

*State v. The Hudson Terminal Ry. Co.*, 46 N.J.L. 289, 294 (N.J.1884); *see also Prairie View Tel. Co. v. Cherry County*, 179

Neb. 382, 138 N.W.2d 468, 470 (Neb.1965) (holding that county did not make good faith attempt to agree because the landowners "were never offered a definite proposal as to the exact right-of-way to be acquired, and consequently were never in a position to make an absolute acceptance thereof").

The Court today concludes that the condemnors satisfied the unable-to-agree requirement, pointing to "the fact that none of the landowners accepted any offer." But it is improper to equate rejection of an offer that comprehends rights greater than those sought to be condemned with refusal to sell only those property rights that could be or were sought to be condemned. Indeed, the Court pays little heed to the Legislature's requirement that the parties be unable to agree on the amount of damages, holding that "[t]he condemnors have established that they made offers to each of the landowners before filing condemnation proceedings. Those offers were rejected or ignored by the landowners. That is enough to satisfy section 21.012's requirements that the parties were 'unable to agree.'" 141 S.W.3d at 191.

Under the standard adopted by the Court today, a condemnor's offer for *any* property rights—including, as in this case, those it does not seek to condemn—would satisfy the unable-to-agree requirement. Rather than discouraging litigation, the Court's standard may foment it. In these cases, despite the fact that the condemnor was authorized and sought to condemn only a natural gas pipeline, all of the final offers provided that the condemnor would receive the right to transport "oil, petroleum products, or any other liquids, gases or substances which can be transported through a pipeline." It is not difficult to imagine a scenario in which a landowner would have accepted an offer for a natural gas pipeline but would not consent to a pipeline carrying some other substance (say, for example, radioactive material—a practice that is not unheard of). *See, e.g., Tribe Opposes Utah Pipeline for Uranium Tailings Slurry*, Reno Gazette–Journal, Apr. 1, 2002 (detailing the Utes' opposition to construction of a pipeline to carry radioactive uranium tailings).

The Court contends that I "provide[ ] no authority" for "such a broad construction" and suggests preemptively (though the issue is not before us) that the language would in fact be construed more narrowly. But the condemnors' words could hardly be clearer; it is difficult to imagine language broader than "*any other liquids, gases or substances which can be transported through a pipeline.*" (Emphasis added.). Moreover, I disagree that, because a natural gas pipeline was included within the offer for a pipeline to transport any substance, the condemnors have satisfied the statutory requirements. One court of appeals has rejected this "greater includes the lesser theory":

[I]f this were the law, it would allow the condemnor to make an offer on a 500–acre tract of land that had been in the landowner's family for five generations, that contained the home of the landowner, numerous improvements made by the landowner, and other properties unconnected with the condemnation when the area sought to be condemned involved only a small strip in the corner of the property. The condemnor could then, under that theory, say that the negotiated offer required under the statute had been made. Such an offer would in no way have any connection with the property to be condemned, and certainly the Legislature could not have intended for such an offer, even though the greater included the lesser, to be considered a good faith negotiation in an attempt to purchase the property to be condemned.

Eminent domain proceeding [sic] can be simplified by simply following the statute and the legislative intent by making an offer only for the property to be condemned.

*Dernehl,* 71 S.W.3d at 861.

I agree with the *Dernehl* court. I would hold that, under the statute, the condemnors must make a single pre-suit offer encompassing only those property rights they will seek to acquire through condemnation. This requirement is neither burdensome nor complex. It comports with the statutory mandate that condemnors demonstrate inability-to-agree and with our obligation to construe the statute in favor of the landowner and against the condemnor.[2] *Burch v. City of San Antonio,* 518 S.W.2d 540, 545 (Tex.1975). Absent this minimal showing, the condemnors cannot show at the time the condemnation petition is filed that the parties are unable to agree on the amount of damages or that further negotiations would be futile. Moreover, this approach provides a bright-line rule that gives landowners a chance to assess the value of rights the condemnor is entitled to condemn. Of course, condemnors would not be precluded from negotiating for additional rights. If these additional rights were combined with the rights to be condemned in a single offer for a lump sum payment, however, the condemnors would not be in compliance with the statute because they could not demonstrate, at the time the petition is filed, an inability to agree on the amount of damages.

I disagree with the proposition that "inclusion of intangible property rights" makes such a requirement impracticable. 141 S.W.3d 191. To begin with, the condemnor controls its pleading and is uniquely suited to include the same items it sought pre-suit. In addition, the Court's statement that a condemnor "might not" be able to compel a landowner to warrant title implies that the opposite "might" be true. I simply do not see how a condemning authority could ever force the landowner "to warrant and defend title to the easement." Defense of title, a valuable commodity in itself, was intermixed with the physical property interest in the condemnors' offers. For that reason, the landowners were never given a pre-suit standalone offer on damages for property the condemnor ultimately sought to condemn.

## II

### Disposition

Given my approach in these cases, it is fair to ask why I concur rather than dissent. Today, the Court correctly observes that nothing in the statute makes compliance a jurisdictional predicate to suit, and the Legislature has not imposed a specific penalty when condemnors do not make separate offers for only those rights they will seek to condemn. Instead, the Court concludes that abatement is an appropriate remedy if a condemnor has not satisfied the unable-to-agree requirement prior to filing suit. In the cases before us, however, remanding the cases so that they could be abated until the unable-to-agree requirement is satisfied would be futile. At this stage of the proceedings, it is clear that the parties are unable to agree on damages for the property sought to be condemned. It would be pointless to invalidate the condemnations on technical

---

2. In fact, the Court seems to apply a contrary presumption, placing the burden on the condemnors to produce "evidence of the value of the three matters about which they now complain or evidence that the owners would have accepted the offers if those matters had been omitted from the offers." 141 S.W.3d at 189.

grounds and remand these cases for abatement so that the condemnors could prove an inability to agree on damages.

Examining the condemnation procedure may clarify matters. The condemnor must file a petition, "stat[ing] that the entity and the property owner are unable to agree on the damages." Tex. Prop.Code 21.012. If a condemnor alleges an "inability to agree" without ever having made an offer, the condemnor and its attorney could face sanctions. *See* Tex.R. Civ. P. 13. After the petition is filed, the judge appoints three disinterested commissioners to hear the case. Tex. Prop.Code § 21.014(a). Notice of the hearing is sent to the landowner, and the hearing is set for "the earliest practical time." *Id.* § 21.015–16. If the landowner wishes to appear and present evidence, he or she may do so. If that occurs, it is clear that the parties are unable to agree on damages for the property sought to be condemned. Alternatively, the landowner can do nothing, and the commissioners will hear the case and enter their findings. At that point, if the landowner agrees with the commissioners' decision, he or she can accept the award, and the landowner is appropriately compensated for the taking. If the landowner or the condemnor is dissatisfied, either can file objections. *Id.* § 21.018. At that time, the landowner may assert that the condemnor has not engaged in negotiations designed to obtain an agreement as to damages. In that event, the trial court must abate the case and require the condemnor to make an offer for the property it seeks to condemn.

In these cases, even though the condemnors' presuit offers were improper, it was apparent that the parties were unable to agree on damages for the property to be condemned after the commissioners entered their award. The landowners objected and the condemnors did not. Re-manding the case at this stage, so that the trial court can abate the proceedings until a proper offer is made, would serve no purpose. *See, e.g., Hill v. State,* 90 S.W.3d 308, 310 (Tex.Crim.App.2002) (declining to order abatement when doing so would be "a futile act"); *Moore Landry L.L.P. v. Hirsch & Westheimer, P.C.,* 126 S.W.3d 536, 542 (Tex.App.—Houston [1st Dist.] 2003, no pet.). Accordingly, under the unique circumstances of these cases, and in light of the rule announced by the Court today, the Court's disposition of these cases is proper.

### Conclusion

I would hold, contrary to the Court's opinion, that the condemnors in these consolidated cases did not establish an inability to agree before they filed suit. It is clear, however, that the landowners and condemnors came to a point of disagreement before true litigation commenced because the condemnors "accepted," and the landowners rejected, the commissioners' awards. Under these circumstances, the statutory requirement was met, albeit at a date later than that contemplated by the Legislature. I reiterate, however, that the simplest and cheapest solution to this problem is for the condemnor to comply with the statute and make an offer for the property it seeks to condemn, before filing a condemnation petition.

Accordingly, I join parts I through III of the Court's opinion and the Court's judgments.